**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 21-cv-1368-WJM-MEH

COLORADO SPRINGS FELLOWSHIP CHURCH, *et al.*,

    Plaintiffs,

v.

CITY OF COLORADO SPRINGS, *et al.*,

    Defendants.

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

This matter is before the Court on two motions: (1) Defendants Office of the District Attorney, Fourth Judicial District ("DAO"), and District Attorney Michael J. Allen's (jointly, "DAO Defendants") Motion to Dismiss ("DAO Defendants' Motion") (ECF No. 24); and (2) Defendants City of Colorado Springs ("City"), Colorado Springs Police Department ("CSPD"), Sherriff Vince Niski, and Detective Brian Corrado's (collectively, "City Defendants") Motion to Dismiss ("City Defendants' Motion") (ECF No. 25). Plaintiffs Colorado Springs Fellowship Church ("CSFC") and eight CSFC parishioners—Eric Jenkins, Matthew Brown, William Willams, Willie Pee, Torri Lopez, Clifford Stewart, Michelle Harris, and Yolanda Banks Walker ("Individual Plaintiffs")—submitted their responses to both Motions (ECF Nos. 36, 37), and Defendants have filed their replies (ECF Nos. 38, 39). For the following reasons, Defendants' Motions are granted and all claims against Defendants are dismissed.

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

## II. BACKGROUND

CSFC is located in Colorado Springs, Colorado. ("Complaint," ECF No. 1 at 3 ¶ 5.) The Individual Plaintiffs are parishioners of CSFC and all but one of them is African American. (*Id.* at 3 ¶¶ 6–13, 11 ¶ 51.)

On January 13, 2020, CFSC executed a lease, as the tenant, for an apartment located at 4597 Gold Medal Point, Colorado Springs, Colorado (the "Apartment") to assist its members who needed a place to live but could not afford rent in another habitable dwelling. (*Id.* at 5 ¶¶ 21,26.) Amisha and Nicholas Gainer (jointly, the

2

"Gainers") were identified as occupants of the Apartment in the lease and were aware of the terms of the lease. (*Id.* ¶¶ 24–25.)

In August 2020, CSFC became aware that the Gainers had been acting in violation of the lease. (*Id.* at 7 ¶ 31.) CSFC advised the Gainers that their actions violated Colorado law and local ordinances, and CSFC's legal counsel later notified the Gainers, in writing, to vacate the Apartment within thirty days. (*Id.* ¶¶ 32–33.)

Plaintiffs do not allege that they filed a Forcible Entry and Detainer action pursuant to Colorado Revised Statutes § 13-40-104, asking a court to rule that the Gainers committed an unlawful detainer and order the El Paso County Sheriff's Office to restore possession of the Apartment to CSFC. Instead, the Individual Plaintiffs appeared at the Apartment to "retrieve the [CSFC's] property and assist the Gainers in their moving out of the [Apartment]." (*Id.* ¶ 34.) The Individual Plaintiffs were accompanied by a locksmith, who changed the locks to the front door. (*Id.* at 8 ¶ 36.)

Inside the apartment, a dispute arose between the Gainers and the Individual Plaintiffs, prompting Mr. Gainer to draw a gun and his son to equip a baseball bat. (*Id.* ¶¶ 35–39.) The Individual Plaintiffs then retreated from the Apartment, and Plaintiff Clifford Stewart called the police. (*Id.* ¶ 39.) CSPD officers responded to the Apartment and, after an investigation by the CSPD, arrested the Individual Plaintiffs for unspecified criminal offenses, which the DAO is currently prosecuting. (*Id.* ¶¶ 40–51.) Plaintiffs also allege that Defendant Corrado "sought to expand his investigation . . . into some fabricated allegations of financial mismanagement by [CSFC]." (*Id.* at 9 ¶43.)

### III. ANALYSIS

Plaintiffs bring this lawsuit pursuant to 42 U.S.C. § 1983 asserting: violations of

the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb *et seq.*, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.*, by Defendants Allen, Niski, and Corrado; and violations of Plaintiffs' First and Fourteenth Amendment rights by all Defendants.  (ECF No. 1 at 11–22.)

The DAO Defendants and the City Defendants argue in their respective Motions that Plaintiffs' claims should be dismissed pursuant to Rule 12(b)(1) and 12(b)(6).  The DAO Defendants argue that the DAO is entitled to absolute immunity under the Eleventh Amendment, Allen is entitled to prosecutorial immunity and qualified immunity, and the Complaint's allegations are inadequately pled.  (ECF No. 24 at 5–16.)  The City Defendants argue that the CSPD is not a proper defendant to this action, Niski and Corrado are entitled to qualified immunity, and the Complaint's allegations are inadequately pled.  (ECF No. 25 at 3–13.)

Because Defendants raise very similar arguments, the Court addresses their Motions together where possible.  First, the Court addresses Plaintiffs' claims insofar as they are brought against improper defendants.  Second, the Court considers whether Plaintiffs have made sufficient allegations to survive a Rule 12(b)(6) challenge for failure to state a claim upon which relief can be granted.  Third, the Court considers the Defendants' arguments regarding immunity.

**A.   Improper Defendants**

   1.   <u>RLUIPA Claims Against Allen, Corrado, and Niski in their Individual Capacities</u>

Defendants argue in their respective Motions that the RLUIPA claims against Allen, Corrado, and Niski in their individual capacities must be dismissed because RLUIPA does not permit individual-capacity claims.  (ECF No. 24 at 7; ECF No. 25 at

4

5.) Plaintiffs do not respond to this argument. (*See generally* ECF Nos. 36, 37.) The Court finds that it is appropriate to dismiss these claims with prejudice since such claims are barred as a matter of law. *Stewart v. Beach*, 701 F.3d 1322, 1335 (10th Cir. 2012) ("there is no cause of action under RLUIPA for individual-capacity claims."). Accordingly, the Court grants this portion of Defendants' Motions and Plaintiffs' RLUIPA claims against Allen, Corrado, and Niski in their individual capacities are dismissed with prejudice because they fail as a matter of law.

       2.     <u>Claims Against Corrado and Niski in their Official Capacities</u>

Any official capacity claim against a municipal employee is treated as a suit against the municipality itself. *See Johnson v. Bd. of Cnty. Comm'rs for Cnty. of Fremont*, 85 F.3d 489, 493 (10th Cir. 1996). As the City is a named defendant in this action, the Court concludes that the official capacity claims against Corrado and Niski are redundant. *French v. City of Cortez*, 361 F. Supp. 3d 1011, 1042 (D. Colo. 2019) (dismissing official capacity claims against individual officers as duplicative of claim against city). Accordingly, to the extent Plaintiffs assert official capacity claims against Corrado and Niski, such claims are dismissed without prejudice.

       3.     <u>Claims Against CSPD</u>

The City Defendants argue that Plaintiffs' claims against CSPD should be dismissed with prejudice because CSPD is not a separate and distinct entity amenable to being sued. (ECF No. 25 at 3.) The Court agrees. *See Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985) (dismissing § 1983 claims against Denver Police Department because it is not a separate suable entity), *remanded to consider mootness*, 475 U.S. 1138 (1986), *on remand*, 800 F.2d 230 (10th Cir. 1986); *Boren v. City of Colo. Springs*, 624 F.Supp. 474, 479 (D. Colo. 1985) (holding city's police

5

department, as merely the vehicle through which city fulfills its policing functions, is not a proper defendant). Therefore, the Court grants this portion of the City Defendants' Motion and all claims against CSPD are dismissed without prejudice.[1]

## B. Sufficiency of the Allegations in the Complaint

### 1. RIFRA and RLUIPA

"Consistent with its name, RLUIPA focuses on two areas: 1) land use, and; 2) institutionalized persons." *Rocky Mountain Christian Church v. Bd. of Cnty. Comm'rs. of Boulder Cnty., Colo*, 481 F. Supp. 2d 1213, 1221 (D. Colo. 2007). RLUIPA provides, in relevant part, that:

> No government shall impose or implement **a land use regulation** in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—
>
> (A) is in furtherance of a compelling governmental interest; and
>
> (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc(a)(1) (emphasis added). The statute defines the term "land use regulation" as:

> **a zoning or landmarking law, or the application of such a law**, that limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option

---

[1] Plaintiffs argue that the passage of a new Colorado law, C.R.S. §§ 24-31-901, *et seq.*, which modifies the scope of qualified immunity for police officers sued under state law, puts into question the strict limits on suing police departments. (ECF No. 37 at 6.) But Plaintiffs do not explain why a law concerning qualified immunity would have any effect on the question of whether police departments are separate entities amenable to suit. Thus, the Court is not persuaded by their argument, and will not consider it further.

6

to acquire such an interest.

42 U.S.C. § 2000cc-5(5) (emphasis added).

Defendants argue in their respective Motions that their conduct, as alleged in the Complaint, has no relation to land use regulations and consequently does not fall within the scope of the statute. (ECF No. 24 at 8; ECF No. 25 at 5.) In their response to the DAO Defendants' Motion, Plaintiffs argue that the actions of the DAO and the CSPD were premised on the Plaintiffs' failure to secure an eviction proceeding within the land use laws of the City. (ECF No. 36 at 9.) Further, Plaintiffs argue that "leasing [the Apartment] (and all actions attendant thereto) were as much a part of its religious actions as a Sunday Service." (*Id.* at 8.) Defendants respond that laws forbidding eviction without a court order are not land use laws, and even if they were, Plaintiffs have not alleged that they were treated differently than another group based on their religion. (ECF No. 36 at 4.)

The Court finds that the Plaintiffs' allegations do not implicate any land use regulations, as defined by the statute. While Defendants' actions were likely premised on laws that address the legal rights of tenants and laws that provide a legal structure for evictions, it is implausible, based on the facts alleged, that Defendants' actions were premised on zoning or landmarking laws. Because Plaintiffs fail to allege conduct that could plausibly be considered a violation of the statute, the Court grants this portion of Defendants' Motions and Plaintiffs' RLUIPA claims are dismissed without prejudice.

  2. <u>Section 1983: First Amendment</u>

Plaintiffs allege that Defendants' actions violated the Establishment Clause and the Free Exercise Clause of the First Amendment. (ECF No. 1 at 21 ¶ 96.) Plaintiffs' claims are based on their alleged false arrest and wrongful prosecution. (ECF No. 37 at

7

10.)  The Tenth Circuit has held that "a First Amendment retaliation claim based on a false arrest requires a separate 'threshold showing'—generally, a plaintiff must show a false arrest."  *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1227 (10th Cir. 2020).

In their Motions, Defendants argue that Plaintiffs have failed to allege facts to plausibly assert that the police did not have probable cause to arrest Plaintiffs. (ECF No. 24 at 11; ECF No. 25 at 8.)  The City Defendants point out that, on the face on the Complaint, Plaintiffs "did not file a forcible entry and detainer action; rather, the Plaintiffs unilaterally changed the locks to the [Apartment] and attempted to remove" the Gainers, who were lawful occupants of the Apartment, according to the lease. (ECF No. 25 at 8.)  Plaintiffs respond to Defendants' arguments by asserting that "sufficient grounds have been established to set forth a basis for the absence of 'probable cause' to have effected the arrests of the Plaintiffs."  (ECF No. 37 at 10.)

The Court is not persuaded by Plaintiffs' conclusory response to Defendants' arguments.  First, Plaintiffs fail to specifically allege the nature of the charges brought against them, which makes it very difficult for them to plausibly allege they were arrested without probable cause.  Second, even based on the facts as alleged, the Court cannot conclude that Defendants lacked probable cause to arrest Plaintiffs based on their treatment of the Gainers.  Because the Complaint does not contain sufficient factual allegations to plausibly allege that there was not probable cause for their arrest, the Court grants this portion of Defendants' Motions and Plaintiffs' First Amendment claims are dismissed without prejudice.[2]

---

[2] Plaintiffs also argue that there is no probable cause requirement when a plaintiff is arrested when similarly-situated individuals who were not engaging in the same kind of First

8

### 3. Section 1983: Fourteenth Amendment

Plaintiffs allege that they were the victims of selective law enforcement in violation of the Equal Protection Clause. (ECF No. 1 at 14–15.) The Tenth Circuit has explained that:

> Those seeking to establish an equal protection claim based on selective law enforcement face a high burden: they must dispel the presumption that a law enforcement official has not violated the Equal Protection Clause with "clear evidence to the contrary." *United States v. Armstrong*, 517 U.S. 456, 465 (1996). Evidence that an officer's actions had a discriminatory effect and were motivated by a discriminatory purpose is necessary. *Marshall v. Columbia Lea Regional Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003).

*United States v. Hernandez-Chaparro*, 357 F. App'x 165, 166 (10th Cir. 2009). "To prove discriminatory effect . . . a defendant must make a credible showing that a similarly-situated individual of another race could have been prosecuted for the offense for which the defendant was charged, but was not." *United States v. James*, 257 F.3d 1173, 1179 (10th Cir. 2001) (citing *Armstrong,* 517 U.S. at 465).

Defendants argue that Plaintiffs fail to state a claim under the Fourteenth Amendment because they fail to allege that a similarly-situated individual of another race could have been, but was not, arrested for the offense for which Plaintiffs were arrested. (ECF No. 24 at 12–13; ECF No. 25 at 7.) In their response to the DAO Defendants' Motion, Plaintiffs argue that Defendants "singularly targeted" Plaintiffs, while ignoring the unlawful behavior of the Gainers. (ECF No. 37 at 9.)

The Court is persuaded by Defendants' argument. The Gainers do not satisfy

---

Amendment protected activity are not arrested. (ECF No. 37 at 10.) This argument fails for the same reason that Plaintiffs' Fourteenth Amendment argument fails, *i.e.*, Plaintiffs have not made adequate allegations of a similarly-situated individual. *See below*, Part III.B.3.

9

the similarly-situation person requirement for several reasons.  First, the Gainers were engaged in different conduct than the Plaintiffs were: Mr. Gainer allegedly brandished a weapon in a threatening manner (ECF No. 1 at 8 ¶ 41) and Mr. Gainer's son allegedly confronted Plaintiffs aggressively with a baseball bat (*Id.* ¶ 37); while the Plaintiffs did not act in a similar manner, and the allegations set forth in the Complaint suggest that they were likely arrested because of their attempted eviction of the Gainers.  Therefore, Plaintiffs have not adequately shown that the Gainers could have been prosecuted for the same offense as Plaintiffs.

Second, Plaintiffs do not allege that the Gainers are of a different race than the Plaintiffs.  Without such an allegation, there is no way to show that a "similarly-situated individual of another race" was treated differently than the Plaintiffs.

For the above reasons, the Court grants this portion of Defendants' Motions and Plaintiffs' Fourteenth Amendment claims are dismissed without prejudice.

    4.    <u>Municipal Liability</u>

Defendants argue that Plaintiffs fail to state a claim for municipal liability because they have not pled facts to show that any municipal employee committed a constitutional violation.  (ECF No. 24 at 15–16; ECF No. 25 at 10.)  Plaintiffs offer no counterargument.  The Court grants this portion of Defendants' Motions and dismisses without prejudice all municipal claims for failure to adequately allege an underlying constitutional violation.  *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993) ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers.").

### C. Immunity Analysis

#### 1. Eleventh Amendment Immunity for DAO

The Eleventh Amendment bars a suit for damages in federal court against a state, its agencies, and its officers acting in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). And the immunity extends to the DAO, which is an extension of the state. *Rozek v. Topolnicki*, 865 F.2d 1154, 1158 (10th Cir. 1989) (holding that Eleventh Amendment immunity extends to the Office of the District Attorney in Colorado).

In their response to the DAO's Defendants' Motion, Plaintiffs argue that Allen's alleged conduct triggers an exception to the general rule. (ECF No. 36 at 6.) However, Plaintiffs do not cite a single case of a § 1983 claim going forward against a District Attorney's *Office*, as opposed to a District Attorney in his or her individual capacity. On this issue Plaintiffs appear to be confusing Eleventh Amendment immunity with prosecutorial immunity, which the Court discusses below.

For the reasons discussed above, the Court dismisses all claims against the DAO.[3] Additionally, Allen is entitled to Eleventh Amendment immunity from suits against him in his official capacity. *Romero v. Boulder Cnty. DA's Off.*, 87 F. App'x 696, 698 (10th Cir. 2004); *Carbajal v. McCann*, 808 F. App'x 620, 638 (10th Cir. 2020) ("The claims against District Attorney McCann in her official capacity are . . . barred by the Eleventh Amendment."). Therefore, the Court grants this portion of the DAO Defendants' Motion and all claims against Allen in his official capacity are dismissed.

---

[3] Although in some circumstances Congress may abrogate a state's sovereign immunity by legislation, Congress did not do so with § 1983 or RLUIPA. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979) (§ 1983); *Sossaman v. Texas*, 563 U.S. 277, 286 (2011) (RLUIPA).

2. <u>Prosecutorial Immunity for Allen</u>

DAO Defendants argue that Plaintiffs' claims against Allen should also be dismissed because he is entitled to absolute prosecutorial immunity. (ECF No. 24 at 6.) The parties agree that Allen is immune from suits that are based on actions taken within his lawful prosecutorial capacity. (ECF No. 36 at 6; ECF No. 38 at 2.) But Plaintiffs argue that Allen was acting outside his role as prosecutor. (ECF No. 36 at 6–7.)

To determine whether a prosecutor's action enjoys absolute immunity, courts consider "(1) whether the action is closely associated with the judicial process, (2) whether it is a uniquely prosecutorial function, and (3) whether it requires the exercise of professional judgment." *Mink v. Suthers*, 482 F.3d 1244, 1261 (10th Cir. 2007) (internal quotation marks and citations omitted). Prosecutorial immunity may attach even to investigative activities when these functions are necessary so that a prosecutor may fulfil his function as an officer of the court. *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1490 (10th Cir. 1991).

Defendants argue that Plaintiffs make "no plausible allegations suggesting that Allen acted outside of his role as a prosecutor." (ECF No. 25 at 7.) Further, they argue that Allen's decision to file charges against Plaintiffs are undoubtedly prosecutorial in nature. (*Id.*) In response, Plaintiffs argue that they adequately alleged Allen's extraprosecutorial conduct by alleging that: (1) Allen was complicit in an unfounded investigation into the finances of CSFC; and (2) Allen failed to initiate an investigation into the Gainers. (ECF No. 36 at 7 (citing ECF No. 1 ¶¶ 91, 49, 95).)

The Court finds that Plaintiffs' first argument is not supported by specific factual allegations in the Complaint. (*See* ECF No. 1 ¶ 91 (alleging that Detective Corrado "attempted to initiate an investigation into [CSFC's] finances," but not referencing

12

Allen).) Their second argument, that Allen acted outside his role of prosecutor when he decided not to initiate an investigation into the Gainers, is not supported by any citation to case law. "And it is well-established law that '[p]rosecutors are entitled to absolute immunity' for anything they do in their roles as advocates, including their 'decisions to prosecute.'" *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018).

Because Plaintiffs fail to make adequate factual allegations supporting their assertion that Allen acted outside of his role as prosecutor, Allen is entitled to immunity for all claims against him in his individual capacity. The Court grants this portion of the DAO Defendants' Motion and Plaintiffs' claims against Allen in his individual capacity are dismissed without prejudice.

### 3. Qualified Immunity for Allen, Corrado, and Niski

"Individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law." *Gutierrez v. Cobos*, 841 F.3d 895, 899 (10th Cir. 2016) (internal quotation marks omitted). "Once the qualified immunity defense is asserted," the plaintiff must show: "first, the defendant[s'] actions violated a constitutional or statutory right, and second, that the right was clearly established at the time of the conduct at issue." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted). "If the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity." *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 211 (2017).

Allen, Corrado, and Niski are entitled to qualified immunity because, as discussed above, Plaintiffs have failed to make out a claim against them for violation of Plaintiffs' constitutional or statutory rights.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. DAO Defendants' Motion to Dismiss (ECF No. 24) is GRANTED;

2. The City Defendants' Motion to Dismiss (ECF No. 25) is GRANTED;

3. All claims against the District Attorney's Office, Fourth Judicial District, and Allen in his official capacity and are DISMISSED WITH PREJUDICE;

4. Plaintiffs' RLUIPA claims against Defendants Allen, Corrado, and Niski, in their individual capacities are DISMISSED WITH PREJUDICE;

6. All other claims are DISMISSED WITHOUT PREJUDICE;

6. The stay in this action (ECF No. 32) is LIFTED;

7. The parties are DIRECTED to contact the chambers of Magistrate Judge Michael E. Hegarty by no later than **February 9, 2022** in order to promptly set a Scheduling Conference, or such other proceeding Judge Hegarty deems appropriate to move this case forward; and

8. Should Plaintiffs believe themselves in a position to plausibly plead facts which would cure the pleading deficiencies noted in this Order, they may file a motion seeking leave to file an amended complaint reflecting same by no later than **March 4, 2022**.

Dated this 4th day of February, 2022.

BY THE COURT:

_____
William J. Martinez
United States District Judge